No. 18,445.

SHEALIE WILSON GREGORY *v.* SWINERTON AND WALBERG
COMPANY, ET AL.

(328 P. [2d] 948)

Decided August 11, 1958.    Rehearing denied September 2, 1958.

Mr. DARWIN D. COIT, Mr. JOHN E. WALBERG, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

Messrs. McCOMB, ZARLENGO & MOTT, for defendants in error Swinerton and Walberg Company and Employers' Mutual Liability Insurance Company of Wisconsin.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to plaintiff in error as the employee and to defendants in error as the employer, the insurance carrier or the commission, as may be appropriate.

The employee seeks review of a judgment by which the district court upheld the action of the Industrial Commission denying his claim for permanent partial disability under the Workmen's Compensation Law.

The employer and the insurance carrier filed the "Employer's First Report of Accident" on July 31, 1956, in which it was asserted that the claimant had suffered an accident on July 12, 1956, while he was using an impact wrench on steel; that the employee twisted his back and as a result thereof suffered dislocation of bones in the sacroiliac.

September 24, 1956, the claim of the employee was filed, and hearings before the referee followed. It was disclosed by the evidence that at the time of the injury of which employee complained he was a steelworker hired by the employer. The employee described the work that he was doing as "heavy work," tightening bolts on the steel framework of large buildings with a heavy impact wrench that applied up to 470 pounds of pressure in tightening the bolts. This work was done by a team consisting of two men. The employee said he had been working with Woodrow Hitt approximately all of the time that he was working for the employer prior to the accident; that the accident occurred when he was tightening a bolt underneath an I beam that was 28 inches wide. He had to sit astraddle the beam and reach underneath it with the wrench to do the job. The impact wrench fouled momentarily, giving a couple of.jerks, causing the strain and injury in the lower small part of the back.

The employee frankly admitted that in March of 1954 when he was working out of Portsmouth, Ohio, he had

suffered an injury similar to the back injury he sustained on July 12, 1956; that the injury of March, 1954, affected his left leg, whereas the injury of July 12, 1956, affected mostly his right leg, and that surgery was never recommended to alleviate the condition brought about by the 1954 accident. A Workmen's Compensation claim arose out of the Ohio injury and the employee settled the claim for $3,000.00, $1,000.00 of which went to his attorney at that time. He testified that he was able to do his work for the employer here, and that while he was not "100% complete," he had no trouble doing his work until the accident of July 12, 1956. When he returned to work with the employer on August 21, 1956, he was given the job of foreman until he was laid off on account of job termination. At the time of the hearing it was necessary for him to "pick" his jobs, in order to get work that he could do, considering his injury.

The only medical testimony presented was that of Dr. Harry C. Hughes, an orthopedist of Denver, Colorado, whose qualifications were admitted. Dr. Hughes' written report dated October 5, 1956, marked "Exhibit A," was admitted and appears in the record. He also testified that he had examined the employee one time since his report, namely, on November 3, 1956, and that no change was observed in the physical condition of the employee between October 5, 1956, and November 3, 1956. He estimated that the employee was suffering a 25% permanent partial disability as a working unit and recommended surgery which might reduce the employee's permanent partial disability to 10%. The type of work that the employee was doing prior to his accident of July 12, 1956, was described to Dr. Hughes, who testified that the employee could not have had a disability exceeding 2½ to 5% as a working unit and still be able to perform the work he was described as doing on July 12, 1956. This is purely negative testimony, and is no proof of existing disability.

The referee of the Commission found as a fact that the

employee had sustained an accidental strain on July 12, 1956, and was totally disabled therefrom until August 20, 1956. He also found that the employee had sustained an injury in Ohio in March 1954; that he had lost two weeks work as a result thereof and had received a settlement of $3,000.00 on a permanent disability, estimated by the Ohio Commission Medical Examiner to be 35% as a working unit. He further found that the employee was suffering from a ruptured intervertebral disc and that he had said injury at the time he settled his claim in Ohio as well as at the time of his employment with the employer. He further found that the permanent disability of the employee and his need for corrective surgery was not due to the accident of July 12, 1956, but was due to the accident sustained in Ohio.

The employer and the insurance company were ordered to pay for the temporary total disability and for the necessary medical expenses incurred to December 17, 1956, not to exceed $1,000.00. The claim of employee for compensation on account of permanent disability was denied. These findings were ultimately approved by the commission and upheld by the trial court.

A transcript of a portion of the proceedings in Ohio, which followed the accident of 1954, was admitted in evidence. This transcript contained testimony of doctors who examined the employee following the Ohio accident which took place twenty-eight months prior to the incident forming the basis of the present claim. The testimony given by the doctors in Ohio was in conflict, and no findings of fact were made by the Ohio commission. A compromise settlement was made. Nothing in the record before us, other than the Ohio transcript, forms a basis for denial of the employee's claim for compensation for permanent partial disability resulting from the accident of July 12, 1956.

Counsel for defendants in error assert in their argument for affirmance of the judgment that the Ohio transcript contains "evidence" which is in conflict with that

given by the employee and Dr. Hughes, and that since the findings of the commission were entered upon conflicting evidence this court should not disturb them.

On behalf of the employee it is urged that "none of the medical evidence offered by the Insurance Company and the Employer, if it can be termed evidence, dealt with the employee's condition as a result of the accident of July 12, 1956. Said evidence did not even deal with the employee's physical condition at any time closer than one year prior to the accident of July ,12, 1956." It is further argued by counsel for employee that, "there is no conflict in the evidence concerning the employee's condition before and after the accident of July 12, 1956. * * *"

██ We agree with counsel for the employee. The undisputed evidence is that for several months the employee had continuously performed the same type of work in which he was engaged at the time of the injury. No conflict in material evidence was created by the introduction of the Ohio transcript. The orders of the commission, uncorrected by the district court below, overlook and disregard the only competent medical evidence relating to, and dealing with, a time near to the accident of July 12, 1956. This testimony, which is unchallenged by competent evidence, establishes that the employee has suffered a permanent disability of 25% as a working unit based upon an aggravation of a pre-existing weakness. He is entitled to the necessary corrective operative procedures which were recommended after the accident of July 12, 1956.

The judgment is reversed and the cause remanded to the trial court with directions to refer the matter back to the Commission with instructions to enter an award consistent with the views herein expressed.

Mr. Justice Knauss and Mr. Justice Sutton not participating.